IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FIORE INDUSTRIES, INC.,

    Plaintiff,

    v.                                                                                       Civ. No. 18-1218 SCY/JFR

JOHN ERICSSON and
ALGASTAR, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Plaintiff Fiore Industries, Inc. brings causes of action for breach of contract and various torts against Defendants John Ericsson and Algastar, Inc. Defendants move to dismiss individual defendant John Ericsson for lack of personal jurisdiction and move to dismiss all counts in the Complaint for failure to state a claim. Doc. 12. The Complaint alleges that Defendants agreed to pay Plaintiff for certain services in connection with a scientific algae-growth project, that Plaintiff performed those services, but that Defendants never paid Plaintiff. Defendants strenuously deny making any such agreement. Further, even taking as true all of the facts asserted in Plaintiff's Complaint, Defendants assert that the Complaint fails to state a claim and so should be dismissed under Federal Rule of Civil Procedure 12(b)(6). With regard to Plaintiff's tort claims (Counts I, II, and V), the Court agrees and hereby dismisses those claims without prejudice.[1] Plaintiff's remaining claims, however, survive.

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P 73(b), the parties have consented to have me serve as the presiding judge and entering final judgment. Docs. 14, 17, 18, 19.

## BACKGROUND

Plaintiff filed its Complaint in federal court on December 26, 2018. Doc. 1. Plaintiff alleges that it is a New Mexico corporation with its principal place of business in Bernalillo County, New Mexico. Compl. ¶ 1. Defendant John Ericsson is a citizen of the state of Florida, and Defendant AlgaStar, Inc. is a Delaware corporation with its principal place of business in Gulf Breeze, Santa Rosa County, Florida. *Id*. ¶¶ 2-3. According to the Complaint, Plaintiff entered into an oral contract with Defendants Ericsson and AlgaStar. *Id*. at ¶ 10. Specifically, Plaintiff asserts it agreed to provide Defendants with substantial support for the development of intellectual property for a scientific research project relating to the accelerated growth of algae. *Id.* ¶ 10. Under that contract, Defendants agreed to pay Plaintiff for the provision of technical support, a New Mexico tax credit, and various materials. *Id.* ¶ 11. Plaintiff provided the support, but Defendants never paid Plaintiff. *Id.* ¶¶ 11-12. The Complaint brings seven counts: (1) fraudulent inducement; (2) negligent misrepresentation; (3) promissory estoppel; (4) breach of contract; (5) prima facie tort; (6) unjust enrichment; and (7) quantum meruit.

In the memorandum in support of their motion to dismiss, Defendants contest almost all of these facts. They assert that they were working with Los Alamos National Laboratories ("LANL") and several universities, laboratories, and businesses on a project to use short wavelength radiation to stimulate growth of microalgae and cyanobacteria. Doc. 13 at 2. It was LANL who proposed that Defendant AlgaStar seek local assistance for developing hardware and software for the project. *Id.* A consultant for Plaintiff recommended that Defendant AlgaStar work with Rio Electro Optics Corporation ("Rio"). *Id.* Rio and Defendant AlgaStar entered into a non-disclosure agreement in 2017, under which neither profits nor losses would be shared absent a further written agreement. *Id.* In turn, it was Rio who chose to work with Plaintiff, because Rio

wanted to make use of Plaintiff's facility. *Id.* Defendants met with Rio over the course of the project to monitor its status and observe test runs. *Id.* at 2-3. During these meetings, Plaintiff and Defendants discussed creating a written agreement that would allow the sharing of profits and losses from this project, but no agreement was ever reached. *Id.* at 3. The project resulted in units that failed to function. *Id.* Despite being asked, both Rio and Plaintiff refused to help Defendants make the units operational. *Id.*

In the motion to dismiss, Defendants first argue that the Court lacks personal jurisdiction over Defendant Ericsson, who resides in Florida. They assert that Defendant Ericsson has not subjected himself to personal jurisdiction in New Mexico for claims against him in his individual capacity because he solely acted on behalf of a corporation, Defendant Algastar, Inc. Second, Defendants move to transfer venue to Florida based on a contract Defendants and Rio signed. Third, Defendants argue that no contract existed between Plaintiff and either defendant. Finally, Defendants argue that the Complaint fails to support the tort claims against them because it does not sufficiently allege the existence of a duty. For the reasons explained below, the Court finds that Plaintiff sufficiently alleges facts to support personal jurisdiction over Defendant Ericsson, that venue is proper in New Mexico, and that Plaintiff has sufficiently pled contract and quasi-contract claims. However, the Court agrees with Defendants that Plaintiff's tort claims are insufficiently pled.

## **DISCUSSION**

I. **The Court Has Personal Jurisdiction Over the Contract Claims Against Defendant Ericsson.**

"The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir. 1984). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of

affidavits and other written materials, the plaintiff need only make a prima facie showing." *Id.* A district court may determine whether the plaintiff has made a prima facie showing without holding an evidentiary hearing. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Behagen*, 744 F.2d at 733. "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.*

      A.    <u>The "fiduciary shield doctrine" versus the "no imputed contacts" rule.</u>

Defendants' primary argument for dismissal of Defendant Ericsson is based on the "fiduciary or corporate shield doctrine, which bars the exercise of personal jurisdiction over corporate officers for actions taken solely on behalf of the corporation." Doc. 13 at 8. "Under the 'fiduciary shield doctrine,' a nonresident corporate agent generally is not individually subject to a court's jurisdiction based on acts undertaken on behalf of the corporation." *Newsome v. Gallacher*, 722 F.3d 1257, 1275 (10th Cir. 2013) (quoting 3A William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 1296.20 (Sept. 2012 update)).

In *Newsome v. Gallacher*, the Tenth Circuit clarified the "significant confusion" surrounding this doctrine. 722 F.3d at 1275-79. The court surveyed prior case law and concluded that it sometimes failed to distinguish between the fiduciary shield doctrine "and a related concept that cautions against imputing contacts to a business's operators." *Id.* at 1275. According to the second concept, which the Tenth Circuit called the "no-imputed-contacts rule," "[e]mployees' contacts with the forum state are not to be judged according to their employer's

4

activities there." *Id.* (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). The no-imputed-contacts rule derives from federal constitutional due process and thus places limits on the state's exercise of its long-arm statute. In other words, the Constitution forbids the exercise of personal jurisdiction over an individual based on anything other than that individual's own contacts with the forum state. *Id.* at 1277-78. By contrast, under the "fiduciary shield doctrine," even the individual defendant's *own contacts* with the forum state do not justify the exercise of personal jurisdiction if those contacts were taken on behalf of a corporation. *Id.* at 1278. The fiduciary shield doctrine is a matter of state law, not federal constitutional due process. *Id.*

As the Tenth Circuit instructed in *Newsome*, 722 F.3d at 1275, the Court will discuss each of these concepts separately in turn. Thus, the Court will first address whether Defendant Ericsson's own contacts with the forum state are sufficient to support personal jurisdiction in New Mexico. If they are, the Court will then address whether New Mexico state law would nonetheless disregard those contacts under the fiduciary shield doctrine.

    B.    <u>Defendant Ericsson's own contacts are sufficient to exercise personal jurisdiction over him.</u>

"[A]n analysis of whether a court's exercise of specific personal jurisdiction comports with the Due Process Clause is a two-step inquiry." *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005). "First we consider whether 'the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "Second, if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* at 1276-77 (internal quotation marks omitted).

"In determining whether a defendant has established sufficient minimum contacts with the forum state, we examine whether the defendant 'purposefully availed itself of the privilege of conducting activities within the forum State.'" *Id.* at 1277 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (alterations omitted). "A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *Id.* (internal quotation marks omitted).

      1.    <u>Minimum contacts</u>

As Defendants point out, Plaintiff's complaint is extremely short on details as to Defendant Ericsson's individual contacts with New Mexico. Compl. ¶¶ 10-11. Attached to its opposition to the motion to dismiss, however, Plaintiff submits the affidavit of Bill Miera, Chief Executive Officer of Fiore Industries. Doc. 16 at 15-17 ("Miera Aff.").[2] Mr. Miera attests that, "[i]n approximately 2012," he "began working with John Ericsson and his company AlgaStar, Inc. in their project to develop a system for the accelerated growth of algae." Miera Aff. ¶ 3. "Ericsson and AlgaStar wanted the assistance of Fiore Industries because of our extensive experience and connections in New Mexico with the engineering community and the two national laboratories located in the state (Sandia National Laboratories and Los Alamos National Laboratories), our access to materials that were vital to their project, our access to laboratories to perform test and engineer product, and our ability to obtain tax credits and funding from the state government." *Id.* ¶ 4. "Ericsson and AlgaStar first approached us." *Id.* ¶ 5. "We agreed with

---

[2] The Court may consider this affidavit in determining whether Plaintiff has met its burden to establish a prima facie showing of personal jurisdiction over Mr. Ericsson. *Sunwest Silver, Inc. v. Int'l Connection, Inc.*, 4 F. Supp. 2d 1284, 1285 (D.N.M. 1998) ("The submission of affidavits in connection with a motion to dismiss for lack of personal jurisdiction does not convert the motion into one for summary judgment . . . .").

6

Ericsson and AlgaStar that, if we could not finalize an equity arrangement, Ericsson and AlgaStar would simply compensate Fiore Industries monetarily for what it provided to the project." *Id.*

In *Pro Axess, Inc.*, the Tenth Circuit found purposeful availment based on a similar agreement to provide services. There, an out-of-state defendant corporation solicited a Utah company's assistance in procuring sunglasses frames in circumstances where "services necessary for the contract were to be performed in Utah." *Pro Axess, Inc.*, 428 F.3d at 1277. "Although the agreement between the parties was a single contract, fulfilling the contract required a continuing relationship based on the provision of services." *Id.* In addition, the defendant corporation engaged in "various direct communications" with the plaintiff in Utah, which "provide[s] additional evidence that [defendant corporation] pursued a continuing business relationship with a Utah corporation." *Id.* at 1277-78. This is directly analogous to Defendant AlgaStar's alleged activity: according to Mr. Miera, Defendant AlgaStar solicited Plaintiff's assistance in New Mexico; it engaged in a continuing relationship with a New Mexico corporation; and it engaged in various direct communications with Plaintiff in New Mexico. Miera Aff. ¶¶ 4-11.

This leaves the question of whether Defendant Ericsson personally had contacts in New Mexico. Plaintiff provides evidence he did. Mr. Miera attests that, "[t]hroughout the process of the project, [Plaintiff] always—and only—dealt with John Ericsson." Miera Aff. ¶ 6. "Mr. Ericsson was also physically in New Mexico and personally working on the project for the majority of the time we worked on the project." *Id.* "I personally exchanged numerous emails with Mr. Ericsson." *Id.* ¶ 7. "Ericsson and AlgaStar eventually abandoned the project, at which point Fiore Industries increased its demands to be paid for its work and materials." *Id.* ¶ 10. "Ericsson refused, instead only offering an extension of debt that would be paid when AlgaStar

received funding." *Id.* "At one point in these negotiations, Ericsson attempted to secure himself—and not AlgaStar—a 'gross sales licensing fee payable to me or my assigns as the inventor.'" *Id.* ¶ 11. In addition, Plaintiff attaches an email purportedly from Defendant Ericsson in which Defendant Ericsson writes, "As I have suggested before-lets schedule a conference call to get these matters resolved to everyone's satisfaction, otherwise most *all our years of working together* will become a loss." Doc. 16 at 18 (emphasis added). At this stage, this evidence sufficiently supports Plaintiff's allegation that Defendant Ericsson personally worked with Plaintiff in New Mexico on the project that is the subject of this lawsuit. *See Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009) ("These are contacts in Utah by the defendants themselves, not . . . contacts that have been imputed to them on account of the actions of the corporation."). Nor can there be any dispute that Plaintiff's causes of action arise out of these contacts. *See Pro Axess*, 428 F.3d at 1278-79 ("Pro Axess's breach of contract claims arose from Sporoptic's solicitation of Pro Axess, development of a business agreement with Pro Axess, and subsequent communications with Pro Axess.").

In reply, Defendants dispute the facts, arguing that "Mr. Ericsson did not negotiate or enter into a contract with Plaintiff" and that "Mr. Ericsson's initial contact for the project" was Rio only. Doc. 20 at 3. Defendants also argue that "Plaintiff provides no proof, email, or other correspondence from 2012 or later where Defendants allegedly request Plaintiff's help." *Id.* Defendants assert that Defendant Ericsson's "only involvement arose in sending electrical components and materials to Rio from Florida and coming to New Mexico to observe the work when notified by Rio that the project had advanced to a certain state." *Id.* at 4-5. Throughout, Defendants steadfastly deny that either Defendant Ericsson or Defendant AlgaStar entered into a contract with Plaintiff. *See generally* Doc. 20. Defendants' arguments are unavailing at this stage

8

of the case. On a motion to dismiss, Plaintiff need only provide prima facie facts that would establish jurisdiction. *OMI Holdings*, 149 F.3d at 1091. "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Behagen*, 744 F.2d at 733. Mr. Miera's affidavit and the emails between Mr. Miera and Defendant Ericsson are sufficient to establish Plaintiff's prima facie case. The first prong of the due process test is thus satisfied.

### 2. Traditional notions of fair play and substantial justice

A five-factor test governs whether a court's exercise of personal jurisdiction offends traditional notions of fair play and substantial justice. *Pro Axess*, 428 F.3d at 1279-80. Neither party addresses this test. The Tenth Circuit has indicated that, when a court determines purposeful availment and minimum contacts to be present, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 1280 (internal quotation marks omitted); *see also Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1167 (10th Cir. 2011). Defendants have not attempted to present such a case and so, for purposes of the present motion, have not satisfied their burden. *See Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011) (declining to sua sponte analyze the five-factor test in the absence of relevant argument from the defendants). The Court finds, at this stage of the proceedings, that personal jurisdiction lies for the contract claims against Defendant Ericsson.[3]

---

[3] Because the Court dismisses the tort claims against all defendants, *see infra* pp. 19-20, it does not examine whether personal jurisdiction lies against Mr. Ericsson on those claims.

C.  <u>The fiduciary shield rule in New Mexico does not prevent the exercise of jurisdiction over corporate officers who have sufficient minimum contacts with the state.</u>

Because "[t]he fiduciary shield doctrine . . . has no necessary connection to the minimum contacts analysis," if it exists at all, "it must be a matter of state law." *Newsome*, 722 F.3d at 1276. Thus, the Court must turn to New Mexico law for answers. *See id.* at 1278-79 (examining Oklahoma law and concluding it would not recognize the fiduciary shield doctrine in cases alleging a breach of fiduciary duty).

Defendants characterize the fiduciary shield doctrine as "intend[ed] to avoid the unfairness of forcing an individual to defend a lawsuit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit, but for the benefit of his employer." Doc. 13 at 9. The corporate shield doctrine only protects Defendants, however, if New Mexico has adopted it. And New Mexico has declined to adopt it under circumstances very similar to the present case. *Santa Fe Techs., Inc. v. Argus Networks, Inc.*, 2002-NMCA-030, ¶ 49, 131 N.M. 772. In *Santa Fe Technologies*, the court explained:

> [T]he fiduciary shield doctrine is not constitutionally required in New Mexico. An employee of a corporation subject to personal jurisdiction will not be shielded from jurisdiction if he or she is a primary participant in the alleged wrongdoing intentionally directed at the forum state, which activities formed the bases of the jurisdiction over the corporation. [The corporation] has sufficient minimum contacts with New Mexico to support personal jurisdiction over it as a corporation. [The individual]'s actions on behalf of [the corporation] were integral to this finding of jurisdiction. [The individual] was then a primary participant. The exercise over [the individual] as an individual is reasonable.

2002-NMCA-030, ¶ 49 (citations and original alterations omitted).

In their Reply, Defendants attempt to distinguish *Santa Fe Technologies*. Doc. 20 at 3. They argue:

> Integral to the jurisdictional claim against [the individual defendant in *Santa Fe Technologies*] was that he personally conceived and orchestrated the corporate

10

> machinations, meetings, purchases, and misrepresentations that allegedly cost Santa Fe Technologies its opportunity to bid with Argus on the federal contract.
>
> In contrast, it is undisputed that Mr. Ericsson did not negotiate or enter into a contract with Plaintiff for the construction of the scanners.

*Id.* Defendants are incorrect about what is disputed in this case. Whether Defendant Ericsson negotiated or entered into a contract with Plaintiff (even if he did so on behalf of Defendant AlgaStar) is a dispute central to this lawsuit. *Compare* Doc. 13-2 ¶¶ 19-20 (affidavit of Defendant Ericsson denying the existence of a contract with Plaintiff and denying that he solicited Plaintiff's business), *with* Doc. 16 at 15-16 ¶¶ 4-6 (affidavit of Mr. Miera claiming that Defendant Ericsson and Defendant AlgaStar approached Plaintiff, that the parties discussed the details of the project and agreed on monetary compensation, and that Mr. Miera only ever dealt with or spoke to Defendant Ericsson). At this point, it is a dispute the Court must resolve in Plaintiff's favor for purposes of jurisdiction. *Dudnikov*, 514 F.3d at 1070.

The Court recognizes that *Santa Fe Technologies*, an intermediate court of appeals decision, is not binding on this Court sitting in diversity jurisdiction. *United States v. Richter*, 796 F.3d 1173, 1185 n.6 (10th Cir. 2015). Nonetheless, it should be treated as "highly persuasive." *Id*. Defendant has not cited, and the Court is unaware of, any decisions from the New Mexico Supreme Court that would undermine *Santa Fe Technologies*' conclusion on the fiduciary shield decision. The Court thus finds that Defendant Ericsson may be subject to personal jurisdiction in New Mexico based on actions taken solely on behalf of a corporation. Further, the Court has already determined that Plaintiff made a prima facie showing that Defendant Ericsson is the primary, and only, person from Defendant AlgaStar with whom Plaintiff communicated in connection with the alleged oral contract. It therefore follows that Defendant Ericsson's "activities formed the bases of the jurisdiction over the corporation" and he is the alleged "primary participant in the alleged wrongdoing." *Santa Fe Techs.*, 2002-NMCA-

030, ¶ 49. As a result, the Court rejects Defendants' arguments that the fiduciary shield doctrine deprives the Court of personal jurisdiction over Defendant Ericsson.

**II.     Venue**

Defendants argue that venue is not proper in New Mexico and this case should be dismissed or transferred to Florida. Doc. 13 at 11-12. The federal venue statute provides that "[a] civil action may be brought in . . . (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b). Despite asserting that there is "no legal or factual basis for venue" in New Mexico, Defendants squarely acknowledge allegations that make venue proper under this statute: "According to the plain language of the Complaint, the event giving rise to the claims—an alleged oral contract to provide 'substantial support'—occurred in New Mexico." Doc. 13 at 12. This allegation (that the alleged contract at issue occurred in New Mexico) satisfies the venue requirement under § 1391(b)(2).

Although Defendants acknowledge that the alleged contract occurred in New Mexico, they assert that a forum selection clause and an arbitration clause in the contract between Defendants and Rio (hereinafter the "Rio Contract") mandate transfer of this case to Florida, where venue is also proper. Doc. 13 at 12. A separate statute, 28 U.S.C. § 1404, governs motions to transfer venue. There are a number of factors courts must consider in deciding whether to grant a motion to transfer.[4] Rather than addressing these factors, Defendants re-assert their side

---

[4] Those elements are: the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010).

of the factual dispute—that they had no agreement with Plaintiff as it was Rio who chose to involve Plaintiff in the algae-growth project. *Id.* As set forth above, now is not the time to resolve this factual dispute.

Defendants also argue that Plaintiff was aware that any dispute involving this algae-growth project was subject to arbitration because the Rio Contract was "witnessed by an officer of Plaintiff." *Id.* Being aware of a contractual provision between other parties, however, is much different than agreeing to be bound by that same provision. Defendants' evidence does not create a material dispute of fact as to the existence of an agreement to arbitrate between Defendants and Plaintiff. Defendants do not assert that Plaintiff signed the Rio Contract or otherwise agreed to its arbitration clause.[5] Instead, the Rio Contract (attached as Exhibit A to Defendants' motion) reveals no signature for Plaintiff anywhere on the document. *See* Doc. 13-1. In fact, even the line for "witnesses" to sign is not signed by Plaintiff, but is instead left blank. Doc. 13-1 at 4. Defendants offer no authority to support the argument that Plaintiff is bound by a contract between Defendants and a third party.

The question of "whether parties have a valid arbitration agreement at all" is a "gateway matter" that is "presumptively for courts to decide." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 n.2 (2013) (internal quotation marks omitted). An agreement to arbitrate "is simply a matter of contract between the parties." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013) (internal quotation marks omitted). Federal courts accordingly "apply

---

[5] Nor could a valid arbitration agreement be based on some oral communication between Plaintiff and Defendants. Under the Federal Arbitration Act, any agreement to arbitrate a given dispute must be in writing. *See* 9 U.S.C. § 2 ("A *written* provision in any . . . contract . . . to settle by arbitration . . . shall be valid . . .") (emphasis added). Plaintiff's Complaint alleges the existence of an *oral* contract between Plaintiff and Defendants. Compl. ¶ 10. By definition, therefore, the parties could not have entered into a valid *written* arbitration agreement.

13

ordinary state-law principles governing the formation of contracts to determine whether the parties have agreed to arbitrate a given dispute." *Id.* (internal quotation marks omitted). Here, the Court concludes that there is no evidence that Plaintiff agreed to arbitrate disputes with Defendants, much less agreed to arbitrate those disputes in Florida. Defendants' motion to transfer venue and enforce the arbitration clause is thus denied.

### III. Plaintiff's Complaint States A Claim For Breach Of Contract And Quasi-Contract Remedies, But Fails To Sufficiently Allege Facts In Support Of Its Tort Claims.

Defendants argue that Plaintiff's Complaint fails to state a claim upon which relief can be granted. The claims in Plaintiff's Complaint fall into three general categories: (1) breach of contract (Count IV); (2) quasi-contract remedies (Counts III, VI, and VII); and (3) torts (Counts I, II and V). The Court will discuss each in turn.

#### A. Breach of contract

Defendants argue that Plaintiff does not plausibly plead the existence of a contract between Plaintiff and Defendants and that the Court should therefore dismiss Count IV of the Complaint. Defendants argue that the Complaint "does not explain how" Plaintiff provided support to Defendants "or what actions it took and for what purpose." Doc. 13 at 13. "It fails to identify the party that directed it to act or the time and cost of the action, if it occurred." *Id.* The Complaint "fails to identify who requested" a state tax credit, "the purpose of the credit, the time of the request, and the place of the request." *Id.* at 13-14. Defendants also complain that Plaintiff does not identify the "materials" it procured for Defendants. *Id.* at 14. The Complaint fails to identify "the names of the parties to the contract, a description of the goods to which the contract relates, [and] the essential terms and conditions constituting the oral contract, including the consideration." *Id.* at 20. It neither indicates any "contractual provisions breached," nor provides specificity on Plaintiff's alleged damages. *Id.*

As support for their argument that the Complaint must include all of the above in order to allege the existence of a contract, Defendants cite *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 810 F. Supp. 1420 (D. Del. 1992). *Remington Arms* is an out-of-circuit district-court summary judgment opinion. It found that, in an insurance coverage dispute, the Federal Rules of Evidence govern a dispute about the contents of a writing if the original has been lost or destroyed. *See id.* at 1424-25. This case provides little assistance to the task of determining the pleading standard for an oral contract.

While federal pleading standards apply to Plaintiff's Complaint, in a diversity jurisdiction case, state law guides the substantive allegations that must be set forth to support the claim. In New Mexico, oral contracts are enforceable as long as they comply with the other requirements for contract formation. *See* NMRA, Civ. UJI 13-801. "For a contract to be legally valid and enforceable, it must be factually supported by an offer, an acceptance, consideration, and mutual assent." *DeArmond v. Halliburton Energy Servs., Inc.*, 2003-NMCA-148, ¶ 9, 134 N.M. 630, 634. Here, Plaintiff alleges that "Fiore Industries entered into an oral contract, in New Mexico, with Ericcson [sic] and AlgaStar, pursuant to which Fiore Industries would provide to Ericcson [sic] and AlgaStar substantial support for the development of intellectual property relating to the accelerated growth of algae." Compl. ¶ 10. Under this contract, "Fiore Industries was to provide services to Defendants, in the form of technical support, materials and expertise in obtaining a gross receipts tax credit." Compl. ¶ 41. Defendants represented that they would pay for the services provided by Plaintiff pursuant to the contract. Compl. ¶ 32. Based on this contract, "Fiore Industries provided Ericcson [sic] and AlgaStar: (1) engineering, testing, assembly and technical support, (2) a New Mexico gross receipts tax credit for use of Los Alamos National

Laboratories and Sandia National Laboratories resources, and (3) various materials." Compl. ¶ 11.

Plaintiff's Complaint is, indeed, short on detail. It does not specify which party made an offer and which party accepted the offer. But Defendants do not cite, and the Court has not found, any authority in New Mexico requiring a complaint to allege these elements. It appears that it is enough to plead that the parties had an agreement with specific terms, that one party performed under the agreement, and that the other party did not.

In *Padilla v. RRA, Inc.*, the New Mexico Court of Appeals confronted a similar argument to the one Defendants raise here. In that case, the defendants argued "that there is no contract because the alleged terms are too indefinite." 1997-NMCA-104, ¶ 5, 124 N.M. 111, 113. The court of appeals explained that "[i]ndefiniteness can defeat a contract claim in two ways." *Id.* ¶ 6. "First, indefiniteness can indicate that the parties failed to reach an agreement." A missing material term, such as the amount of the promised payment, can render a contract indefinite. *Id.* The mere promise to pay, however, can give rise to a contract if the parties intended to make a binding agreement. *Id.* ¶ 7. Second, indefiniteness can defeat the requirement that the terms of a contract be "reasonably certain." *Id.* ¶ 8. However, if "two parties have bargained for one of them to provide personal services to the other but they have left the payment term to later negotiations, a court in appropriate circumstances may determine that the parties have reached an enforceable contract to provide the services for a 'reasonable' payment." *Id.* ¶ 10. In other words, under New Mexico law, an oral contract can be enforceable even where it is missing some terms that appear material. *See also, e.g.*, *McCasland v. Prather*, 1978-NMCA-098, ¶¶ 17-20, 92 N.M. 192, 196-97 (a complaint need not specify price or duration in order to allege the existence of a contract). Thus, because New Mexico would not necessarily require a plaintiff to prove the

16

existence of every detail of the contract even at trial, it is unreasonable to hold Plaintiff to the requirement of pleading every detail of a contract in order to allege its existence.

The Complaint gives Defendants fair notice of Plaintiff's claim: Plaintiff performed services for Defendants that Defendants had promised to pay for, but never did. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Federal Rule of Civil Procedure 8 requires that a plaintiff "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests"). Count IV of the Complaint, breach of contract, is sufficiently pled.

### B. Quasi-contract remedies

Defendants move to dismiss Plaintiff's quasi-contractual causes of action (promissory estoppel as alleged in Count III, unjust enrichment as alleged in Count VI, and quantum meruit as alleged in Count VII) on the same basis as their motion to dismiss the contract claim: no agreement ever existed between the parties. Doc. 13 at 19 ("Plaintiff has identified no concrete promise made by Defendant[s] upon which Plaintiff detrimentally relied."); *id.* at 23-24 ("Since Defendants did not accept, want, or bargain for the defective units [provided by the Plaintiff], granting quantum meruit or a claim for unjust enrichment would force Defendants to pay for units that do not function."). But as Plaintiff points out, these causes of action are pled in the alternative to the breach of contract claim: these causes of action may give Plaintiff relief under equity in the absence of a contract. *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 129 N.M. 200. Plaintiff is permitted to plead contract and quasi-contract theories in the alternative. Fed. R. Civ. P. 8(a)(3) (the "demand for the relief sought . . . may include relief in the alternative or different types of relief"); *Starko, Inc. v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, ¶ 94, 276 P.3d 252, 278, *rev'd on other grounds*, 2014-NMSC-033, ¶ 94, 333 P.3d 947.

Defendants' argument that Plaintiff provided Defendants a worthless product is not properly presented in a motion to dismiss, which tests only the sufficiency of the pleading. Nor does Defendants' argument render Plaintiff's claims implausible. That a product ultimately proves to be worthless does not mean that the services provided in producing that product had no value. For example, a drug company who hires an independent researcher to develop and test a drug that ultimately fails to provide the desired medical benefit still receives value from the work of the independent researcher, even if the product has no value.

Here, Defendants argue that Plaintiff provided them nothing of value because "Plaintiff would not provide the passwords to access the computer operations system which was essential to operate both BioStim units" and "Plaintiff and/or Rio had deleted necessary computer files, thus sabotaging both units." Doc. 13 at 3. The Court understands that Defendants' position is that Plaintiff cannot deny them a thing of value and then prevail on causes of action that depend on Plaintiff having provided something of value. But what, if anything, Plaintiff actually provided is in dispute and cannot be resolved at this stage of the proceedings. The Complaint's allegations that Plaintiff provided services and materials to Defendants, and Defendants did not pay for them, are sufficient to state quasi-contractual claims pleaded in the alternative to the existence of an oral contract.

Finally, Defendants argue that the Court should dismiss the promissory estoppel claim (Count III) because "Plaintiff has identified no concrete promise made by Defendant[s]." Doc. 13 at 19. Again, the Court agrees that the Complaint is extremely short on detail. Nonetheless, it does specifically allege that Defendants promised to pay Plaintiff for Plaintiff's described services, Plaintiff provided these services, and then Defendants failed to pay for them. Compl. ¶ 32. Such allegations are sufficient to support a claim for promissory estoppel.

C. Torts

Plaintiff brings three tort claims: fraudulent inducement; negligent misrepresentation; and prima facie tort. All three torts have a common element: Defendants promised to pay Plaintiff for work performed, with the intention of never actually making payment (or acting in reckless disregard of the substantial likelihood that they would never pay). Compl. ¶¶ 17, 26-27, 46. Defendants move to dismiss the tort claims on the basis that "[t]he facts, as alleged, would be based entirely on Defendant's duties under the parties' contract" and "there is no factual support to impose a duty on Defendant independent of the contract." Doc. 13 at 18.[6]

Defendants are correct that a simple breach of contract is not a tort. *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 17, 117 N.M. 434, 439; *Beaudry v. Farmers Ins. Exch.*, 2018-NMSC-012, 412 P.3d 1100. It appears, however, that New Mexico would recognize the legal theory undermining Plaintiff's tort claims—that "the promise to pay money in the future with the present intent to not keep the promise" is actionable fraud, and not merely a breach of contract. *Telman v. Galles*, 1936-NMSC-073, ¶¶ 16-17, 63 P.2d 1049, 1052.

Nonetheless, the Court concurs with Defendants that the tort claims are not sufficiently pled. Plaintiff's claim that Defendants entered into an agreement to pay them, with the contemporaneous intent of never actually paying, is mere conjecture. The only fact in the Complaint supporting this conjecture is that payment was, in fact, never made. Compl. ¶ 12. As the Tenth Circuit has explained,

---

[6] Defendants also argue that the heightened pleading standard of Federal Rule of Civil Procedure 9(b) applies to Plaintiff's "two claims of fraud." Doc. 13 at 14. Plaintiff's Complaint only contains one count of fraud—Count I. It is not clear that Rule 9(b) applies to claims of *negligent* misrepresentation (Count II). *See City of Raton v. Arkansas River Power Auth.*, 600 F. Supp. 2d 1130, 1142-43 (D.N.M. 2008) (discussing the variety of case law relating to this question). Because the Court concludes that the tort claims do not satisfy the lesser standard of Rule 8, it does not reach the Rule 9 question.

> Here, although plaintiffs allege fraud, they have presented no evidence that [the defendant's] promise to perform was accompanied by an intent not to do so. Indeed, the only proof in this record upon which we can predicate an intent not to keep the promises made is the fact that such promises were not kept. Dismissal of plaintiffs' fraud claim was appropriate because breach of a contract alone is not proof of fraud.

*Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1173 (10th Cir. 1993) (internal quotation marks, alterations, and citation omitted). This conclusion has even more force after the Supreme Court's warning in *Ashcroft v. Iqbal* that Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." 556 U.S. 662, 678-79 (2009).

Plaintiff's Complaint contains facts that support nothing more than a breach of contract claim. Because the mere fact that a contract was breached does make it plausible that Defendants intended not to pay Plaintiff at the time they promised to do so, Plaintiff's tort claims are dismissed.

## **CONCLUSION**

Defendants' motion to dismiss Defendant John Ericsson for lack of personal jurisdiction (Doc. 12) is DENIED. Defendants' motion to dismiss for failure to state a claim is GRANTED IN PART and DENIED IN PART. Defendants' tort claims, Counts I, II, and V of the Complaint, are DISMISSED WITHOUT PREJUDICE.

_____
STEVEN C. YARBROUGH
UNITED STATES MAGISTRATE JUDGE
Presiding by consent