**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

FIORE INDUSTRIES, INC.,
a New Mexico Corporation,

      Plaintiff/Counter Defendant,

      v.                                                             Civ. No. 18-1218 SCY/JFR

John ERICSSON, an individual,
and ALGASTAR, INC., a Delaware
Corporation,

      Defendants/Counter Plaintiffs.

## MEMORANDUM OPINION AND ORDER[1]

      Plaintiff Fiore Industries, Inc. alleges that Defendants John Ericsson and Algastar, Inc. have refused to pay it for support it provided in connection with the development of intellectual property related to the accelerated growth of algae. Defendants counterclaim, alleging that Plaintiff sabotaged the project, brought a breach of contract claim without probable cause to allege that a contract existed, and interfered with their business relationships. Thus, the Counterclaim brings causes of action for malicious abuse of process and tortious interference with business expectations. Plaintiff moves to dismiss the Counterclaim, arguing that the Court lacks supplemental jurisdiction or, alternatively, that Defendants fail to state a claim. The Court agrees that it lacks subject-matter jurisdiction over the claim for malicious abuse of process. Further, Defendants fail to state a claim for tortious interference with business expectations. The Court therefore grants Plaintiff's Motion.

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 17, 18, 19.

## FACTUAL BACKGROUND

The Complaint revolves around an alleged oral contract between Plaintiff and Defendants,[2] under which Plaintiff would provide Defendants with "substantial support for the development of intellectual property relating to the accelerated growth of algae." Compl. (Doc. 1) ¶ 10. Plaintiff claims it provided testing, technical support, and various materials for these research projects. *Id*. at ¶ 11. Under that contract, Plaintiff says, Defendants agreed to pay Plaintiff for: (1) engineering, testing, assembly and technical support, (2) a New Mexico gross receipts tax credit for use of Los Alamos National Laboratories and Sandia National Laboratories resources, and (3) various materials.. *Id.* ¶ 11. Plaintiff asserts that Defendants have not paid Fiore Industries for any of the services or materials Fiore Industries provided. *Id.* ¶ 12.

Defendants' Counterclaim paints a different picture. Defendants contend that a New Mexico company, BioStim, Inc., and Los Alamos National Laboratories ("LANL") sought out Plaintiff for development of microwave algae technology. Doc. 35 at 6 ¶¶ 4-5. Plaintiff in turn sought out Rio Electro Optics Corporation ("Rio"), who volunteered to help with the development. *Id*. ¶¶ 6-7. Defendants and Rio entered into a non-disclosure agreement, which provided that the signatories "would not operate as a joint venture, partnership, or formal business entity." *Id*. at 6-7 ¶¶ 8-9. Defendants acknowledge that they "voluntarily offered services on the project" Plaintiff was working on and discussed the issue of compensation with Plaintiff, but that the parties never entered into a contract. *Id*. at 1 ¶ 5. In August 2018, Plaintiff agreed to provide two the BioStim units the parties had been working to develop. But the units

---

[2] For clarity, the Court will refer to Fiore Industries, Inc., the party who filed the original claims, as Plaintiff and will refer to John Ericsson and Algastar, Inc. as Defendants, even though they filed the counterclaims at issue in this Order.

Plaintiff provided, Defendants allege, were either missing necessary passwords or did not function. *Id.* ¶¶ 34-39.

Defendants also allege that "at some point in 2014 or 2015, Rio and [Plaintiff] entered into an agreement to make use of [Plaintiff's] facility" and that "Rio was employed by [Plaintiff] as a consultant on a number of other projects." *Id.* ¶¶ 18, 30. Defendants allege that Plaintiff "limited Rio's ability to work on the [project] by requiring Rio to assist with other projects," and that Plaintiff "removed or fired several of its employees who worked on [Defendant's] project which resulted in further delay to Rio's work on the project." *Id.* ¶¶ 32-33. Furthermore, Defendants allege that the delays to the work, caused by Plaintiff's disruptions to Rio, resulted in the delivery of only two of the three project BioStem units, and neither delivered unit functioned. *Id.* ¶¶ 34-39. Defendants conclude that the delays and failure to deliver all promised units cost them several grant opportunities and forced Defendants to expend resources to mitigate Plaintiff's shortcomings. *Id.* ¶ 58. Because they had no contract with Plaintiff, Defendants allege that Plaintiff's complaint constitutes a malicious abuse of process. Doc. 35 ¶¶ 41-47. Further, Defendants allege that through the combination of Plaintiff's deficient performance and influence over a third-party, Plaintiff tortiously interfered with Defendants' other business prospects. Doc. 35 ¶¶ 50-53.

## **PROCEDURAL HISTORY**

Plaintiff filed its Complaint in federal court on December 26, 2018. Doc. 1. On October 30, 2019, the Court entered its Memorandum Opinion and Order granting in part and denying in part Defendants' motion to dismiss. The Court found that the Complaint sufficiently stated a claim for breach of contract and that Plaintiff had established a prima facie case of personal jurisdiction over Defendant Ericsson. Doc. 33. The Court, however, dismissed Plaintiff's tort

3

claims. Doc. 33. On November 12, 2019, Defendants filed their Answer and Counterclaim, alleging: (1) malicious abuse of process; (2) punitive damages; and (3) tortious interference with business expectations. Doc. 35. On December 3, 2019, Plaintiff filed its Motion to Dismiss Counterclaim Pursuant to Rule 12(b)(6) and 12(b)(1). Doc. 37. Defendants filed a response in opposition on December 17, 2019, Doc. 40, and Plaintiff filed a reply on January 13, 2020, Doc. 44.

## LEGAL STANDARD

A Rule 12(b)(6) motion "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). When considering a Rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the counterclaim, view those allegations in the light most favorable to the counterclaimant, and draw all reasonable inferences in the counterclaimant's favor. *See Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009). The allegations must "state a claim to relief that is plausible on its face." *Id.* A counterclaimant must present a counterclaim "with enough factual matter (taken as true) to suggest" that a court could grant the relief sought. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A counterclaimant's obligation to provide the grounds for their entitlement to relief "requires more than labels and conclusions." *Id.* at 555. A counterclaimant's factual allegations "must be enough to raise a right to relief above the speculative level." *Id*.

## DISCUSSION

### I.     Malicious Abuse of Process

Plaintiff argues that the Court lacks supplemental jurisdiction to hear the malicious abuse of process claim. Whether Plaintiff is correct depends on whether the counterclaims are part of the same case or controversy as the original claims in the complaint. *Exxon Mobil Corp. v.*

*Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) ("[O]nce a court has original jurisdiction over some claims in the action, it may exercise supplemental jurisdiction over additional claims that are part of the same case or controversy."); 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy"). In deciding whether counterclaims "form part of the same case or controversy" as claims in a complaint and, therefore, fall within the court's supplemental jurisdiction, published Tenth Circuit precedent requires a district court to first determine whether the counterclaim is compulsory or permissive. A compulsory counterclaim necessarily falls within the federal court's supplemental jurisdiction, but "[a] permissive counterclaim must be supported by independent jurisdiction." *NLRB ex rel. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO-CLC v. Dutch Boy, Inc., Glow Lite Div.*, 606 F.2d 929, 932 (10th Cir. 1979).[3]

Defendants argue that the abuse of process claim is a compulsory counterclaim over which the Court would have supplemental jurisdiction. *See* Doc. 40 at 4. In deciding this issue, the Court first considers whether it should apply federal law (specifically, Federal Rule of Civil Procedure 13) or state law. The Tenth Circuit appears to have indirectly answered this question, albeit without any analysis, by applying Rule 13 in a diversity case. *See Geoffrey E. Macpherson, Ltd. v. Brinecell, Inc.*, 98 F.3d 1241, 1244-45 & n.2 (10th Cir. 1996) (applying Federal Rule of Civil Procedure 13 in a diversity case); *see also Walker v. THI of New Mexico at*

---

[3] Other courts have questioned whether, after the enactment of § 1367 in 1990, the issue of supplemental jurisdiction over a counterclaim should still turn on the compulsory/permissive distinction. *See Walker v. THI of New Mexico at Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1299-300 (D.N.M. 2011) (collecting cases). But neither party in this case argues for a departure from the Tenth Circuit's holding in *Dutch Boy* and, even if they did, such a departure would not be for this Court to pronounce.

5

*Hobbs Ctr.*, 803 F. Supp. 2d 1287, 1317 (D.N.M. 2011) (concluding that Rule 13 is procedural and should apply in a diversity case). The Court will follow suit and also apply Rule 13.[4]

Rule 13 states that a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and [] does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a). Otherwise, a counterclaim is permissive. To determine if a counterclaim satisfies the same "transaction or occurrence" requirement, a court should look at whether: "(1) the issues of fact and law raised by the principal claim and the counterclaim are largely the same; (2) *res judicata* would bar a subsequent suit on defendant's claim; (3) the same evidence supports or refutes the principal claim and the counterclaim; and, (4) there is a logical relationship between the claim and counterclaim." *F.D.I.C. v. Hulsey*, 22 F.3d 1472, 1487 (10th Cir. 1994); *see also Pipeliners Local Union No. 798, Tulsa, Okl. v. Ellerd*, 503 F.2d 1193, 1199 (10th Cir. 1974) (citing Wright and Miller, Federal Practice and Procedure, Civil § 1410). An affirmative answer to any of these questions indicates the claim is compulsory. Wright and Miller, Federal Practice and Procedure, Civil § 1410. The most compelling test is whether both the original claims and the counterclaims arose out of the same transaction or occurrence, which logically relate by reason of their common origin. *Pipeliners Local Union*, 503 F.2d at 1199.

Judge Browning of this District analyzed these factors and concluded that, under Rule 13, malicious abuse of process claims are permissive because "issues of fact and the issues of law raised by the claims and the counterclaims [are] significantly dissimilar, because judgment on the plaintiff's claims would not operate as res judicata in a suit for malicious abuse of process, and because there [is] not a sufficient logical relation between the claim and the counterclaim." 803

---

[4] The parties rely on federal law without addressing this question. Further, no party points to a difference between state and federal law that would be material in this case.

6

F. Supp. 2d at 1317-18. In that case, the plaintiff brought claims of racial discrimination, retaliation, breach of contract, and intentional infliction of emotional distress. *Id.* at 1318. Judge Browning pointed out that the substantive claims require plaintiff to show, for example, a prima facie case of discrimination. *Id.* at 1318-19. By contrast, the malicious abuse of process claim requires an improper use of court process with a primary motive to accomplish an illegitimate end. *Id.* at 1319. These raise "separate and distinct" issues of law and fact. *Id.* Judge Browning explained:

> While the facts in the discrimination and retaliation case will be used in the abuse-of-process case, and whether Walker has a valid claim will be an issue in both, the factual issues are mostly different. The factual issues underlying Walker's claims relate to whether the Defendants discriminated against her or retaliated against her, whether they had a contract with her which they breached, and whether they acted outrageously with reckless regard in discriminating or retaliating against her, causing her severe emotional distress. In contrast, the factual issues relating to the Counterclaimants' Counterclaim relate to whether Walker had a reasonable belief, after conducting a pre-filing investigation that she could establish her claims, whether Walker engaged in procedural improprieties in the course of the litigation, and whether Walker's actions were intended to accomplish an illegitimate end. The factual issues underlying Walker's claims and the Counterclaim are thus separated in time, and do not relate to the same occurrences.

*Id.* at 1320. This analysis applies with equal force in the present case.

Additionally, Judge Browning found that there are practical reasons not to treat abuse of process claims as compulsory. "[T]here is no[] sound reason to encourage these claims to be brought in the underlying case." *Id.* at 1322. "Abuse-of-process claims are disfavored, and if not brought, society will not usually lose. Most of the underlying claims settle, and all parties usually release all claims against each other, including abuse-of-process claims. There is no sound reason to force defendants to file early or lose their abuse-of-process claim; such a rule is likely to increase unnecessarily the number of disfavored claims." *Id.* Further, "abuse-of-process claims in the underlying case create significant management problems for all persons involved,

7

especially the plaintiff and the court." *Id.* "The presence of the abuse-of-process claim puts the plaintiff's work product, billing statements, and attorney-client communications at possible issue." *Id.* Again, there is no sound reason to force the parties to litigate these issues in the same action as the underlying claims. *Id.* Finally, Judge Browning acknowledged that, although federal law controls without respect to what state law says, it would create perverse incentives to depart from state law on the issue.[5] "[I]f the federal court makes abuse-of-process claims based on New Mexico law compulsory, the federal court creates a situation where litigation in federal court invites more of these claims than the state courts, thus creating a different scenario for litigation in federal courts as opposed to in state courts." *Id.* As a policy matter, such a divergence between the law in the two courts is not desirable. *Id.*

Similarly, in this case, the set of facts that led to the complaint—the breakdowns in the algae project and any breach of contract—have little to do with facts regarding Plaintiff's actions in filing the Complaint, facts regarding Plaintiff's subjective intent and beliefs in filing the Complaint, and facts regarding Plaintiff's actions in the litigation. Therefore, the circumstances underlying the cause of action and the circumstances underlying the filing of the complaint itself do not form one cohesive factual unit. In addition, Defendants recognize that the factfinder must first find that an oral contract existed between the parties before the abuse-of-process claims can be litigated. Doc. 40 at 7. This would require that the parties conduct a trial relating to both the breach of contract and whether Plaintiff had an improper motive for filing this lawsuit, even though the factfinder may never need to reach the second question, depending on how it answers the first. This could result in the expenditure of a great deal of resources on a question that did not need to be litigated at all. And, in finding the claims to be mandatory, the Court would be

---

[5] In New Mexico, abuse-of-process counterclaims are permissive rather than mandatory. *Gonzales v. Lopez*, 2002-NMCA-086, ¶ 11, 132 N.M. 558, 563, 52 P.3d 418, 423.

8

creating an incentive for parties to file any questionable abuse-of-process claim early in litigation, although they are disfavored, for fear of losing the opportunity should stronger support for the claim emerge in the future.

In short, the Court agrees with Judge Browning in *Walker* that abuse-of-process counterclaims are permissive, not mandatory. Therefore, the Court does not have supplemental jurisdiction over this counterclaim. The Court thus turns to the question of whether independent grounds for federal jurisdiction exist.

Defendants assert that the abuse-of-process counterclaim has an independent jurisdictional basis because it meets the requirements for diversity jurisdiction. Doc. 40 at 8. This grant of jurisdiction requires diversity of citizenship and an amount in controversy exceeding $75,000. *See* 28 U.S.C. § 1332(a). The parties do not contest diversity of citizenship. Plaintiff, however, disputes the amount in controversy. *See* Doc. 37 at 5.

The party seeking federal review of a claim bears the burden of establishing federal jurisdiction. *See Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1216 (10th Cir. 2003). The Court may accept a good-faith allegation that the amount in controversy is satisfied unless the other party contests jurisdiction. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87-89 (2014). If the amount in controversy is challenged, the party invoking federal court jurisdiction must submit evidence establishing the amount. *Id.* at 89.

Here, Defendants lose at both steps. First, they have not alleged that the amount in controversy is satisfied—either in the Counterclaim or in their response to the motion to dismiss. They point to a request for attorney's fees and punitive damages, but they make no effort to quantify those amounts. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247–48 (10th Cir. 2012) ("a defendant's mere use of the words punitive damages" does not

"automatically justif[y] the removal of a case on the theory that punitive damages in some unspecified amount may be possible"). Second, even after Plaintiff contested jurisdiction in its motion to dismiss, Defendants presented no evidence regarding the amount in controversy. Thus, Defendants have not met their burden to establish federal jurisdiction over the Counterclaim and the Court will dismiss the claim without prejudice under Rule 12(b)(1).[6]

## II.     Tortious Interference with Business Expectations[7]

Plaintiff argues that Defendants fail to state a claim for tortious interference with business expectations under Rule 12(b)(6). Doc. 37 at 6. The New Mexico Supreme Court has described this tort as "interference with the business relations of another . . . without privilege or justification," *Williams v. Ashcraft*, 1963-NMSC-080, ¶ 4, 72 N.M. 120, 121, but more commonly characterizes it as tortious interference with an existing or prospective contract, *Fikes v. Furst*, 2003-NMSC-033, ¶ 21, 134 N.M. 602, 609; *M & M Rental Tools, Inc. v. Milchem, Inc.*, 1980-NMCA-072, ¶ 14, 94 N.M. 449, 452. Though the Counterclaim is vague as to exactly which contracts or business relations are at issue, Defendants clarify in their response that they only allege interference with *prospective* contracts and funding sources, rather than existing ones. Doc. 40 at 11-12.

---

[6] In the alternative, Plaintiff argues that Count I fails to state a claim upon which relief can be granted. Doc. 37 at 5-6. Because the Court lacks jurisdiction over Count I, it does not reach this issue.

[7] Plaintiff does not argue that the Court lacks jurisdiction over this count. *Cf.* Doc. 37 at 3-5. Nonetheless, of course, the Court has an independent duty to satisfy itself of its jurisdiction. In this count, Defendants allege that Plaintiff's failure to deliver the BioStem units and Plaintiff's intentional sabotage harmed Defendants' relationship with LANL and Florida Agricultural and Mechanical University ("FAMU"). Doc. 35 ¶¶ 51-58. The Complaint revolves around the same events but from a different perspective (i.e., that the project's failure was due to Defendants' refusal to pay Plaintiff for its services). Rule 13's same "transaction or occurrence" test is satisfied, and thus the Court has jurisdiction over this count of the Counterclaim.

The parties agree that, to succeed on such a claim, Defendants must allege either (1) improper motive; or (2) improper means. *Zarr v. Washington Tru Sols., LLC*, 2009-NMCA-050, ¶ 6, 146 N.M. 274, 276; *see* Doc. 37 at 8 ("Defendants also do not allege any improper motive or improper means on Fiore's part, as is required to sustain a claim for interference with contractual relations."); Doc. 40 at 10 ("A plaintiff must also allege that the defendant committed the tort with either improper motive or through improper means."). For interference with prospective contracts based on an improper-motive theory, the plaintiff must prove that the defendant acted with the sole intent of harming the plaintiff. *Zarr*, 2009-NMCA-050, ¶ 10. The improper-means test is separate, and it does not require sole intent to harm. *Id.* ¶ 11.

Plaintiff argues, and the Court agrees, that the Counterclaim does not allege that Plaintiff acted with the sole intent of harming Defendants. In fact, the Counterclaim does not allege Plaintiff's state of mind at all. It merely asserts that Plaintiff knew about Defendants' contractual relations. Doc. 35 ¶ 52. Defendants' response brief is the same. Doc. 40 at 11 ("Fiore had knowledge of the intent of Counter-Plaintiffs to seek prospective contracts with venture capital funding in 2019"); *id.* at 12 ("Counter-Plaintiffs have alleged that they had a relationship with LANL and FAMU to test and use Counter-Plaintiffs' BioStim research units to accelerate the growth of microalgae and develop tools to aid in the acceleration, which would lead to economic benefit for Counter-Plaintiffs. Fiore had knowledge of these existing relationships and disrupted them . . . ."). Alleging that Plaintiff knew of the contractual relations falls well short of alleging, and providing facts in support, that Plaintiff acted with the sole intent to harm Defendants. The Court agrees that the Counterclaim fails to state a claim based on an improper-motive theory.

Defendants' response recognizes that they may also rely on an improper-means theory. Doc. 40 at 12. The primary case Defendants rely on, however, is an inapplicable state court case

11

from California.[8]  They make no attempt to explain how Plaintiff's conduct falls within the tactics described by New Mexico courts as improper. *Cf. Zarr*, 2009-NMCA-050, ¶ 11. The Court will therefore grant Plaintiff's motion and dismiss Count III.

### III.    Punitive Damages

The Court will also dismiss Count II, the standalone counterclaim for punitive damages. A party seeking damages "must establish a cause of action before punitive damages can be awarded." *Sanchez v. Clayton*, 1994-NMSC-064, ¶ 13, 117 N.M. 761, 767. Defendants, for the reasons explained above, have failed to establish a cause of action on their other two claims. Accordingly, the Court cannot award punitive damages and will dismiss Count II for failing to state a claim.

### IV.    Request to Amend

In their response, Defendants request leave to file an amended counterclaim if the Court grants Plaintiff's motion. Doc. 40 at 14. The deadline for Defendants to amend pleadings and join additional parties by written consent, or to seek leave of the court to amend and join additional parties, was November 7, 2019. Doc. 25 at 2. Thus, a request to join or amend made after this date (such as the one in Defendants' response brief, filed December 17, 2019), must show, in addition to the Rule 15 standard, "good cause" under Rule 16 for modifying the scheduling order. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). Defendants do not address either the Rule 15 standard or the Rule 16 standard. Defendants' request further fails to comply with Local Rule 7.1(a) ("Movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for

---

[8] Defendants rely on a California case that appears to allow a plaintiff to merely plead knowledge of contractual relations, rather than specific intent to interfere with them. Doc. 40 at 12-13. This case is of no import, however, given Defendants' earlier recognition that New Mexico law requires improper motive or improper means. *Id.* at 10.

concurrence may be summarily denied.") and Local Rule 15.1 ("A proposed amendment to a pleading must accompany the motion to amend.").

The request is denied without prejudice to a refiled motion that addresses the correct standards and complies with the Local Rules.

## **CONCLUSION**

Plaintiff's Motion to Dismiss Counterclaim Pursuant to Rule 12(b)(6) and 12(b)(1), Doc. 37, is GRANTED.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent