**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

FIORE INDUSTRIES, INC.,
a New Mexico Corporation,

        Plaintiff,

        v.                                               Civ. No. 18-1218 SCY/JFR

John ERICSSON, an individual,
and ALGASTAR, INC., a Delaware
Corporation,

        Defendants.

**MEMORANDUM OPINION AND ORDER DENYING SUMMARY JUDGMENT**[1]

        Plaintiff Fiore Industries, Inc. brings this lawsuit claiming that Defendants John Ericsson and AlgaStar, Inc. have refused to pay it for support Plaintiff provided in connection with the development of intellectual property related to the accelerated growth of algae. Plaintiff moves for summary judgment on the remaining counts of its complaint: breach of contract, quantum meruit, unjust enrichment, and promissory estoppel. *See* Plaintiff Fiore Industries, Inc.'s Motion For Summary Judgment And Memorandum In Support Thereof, filed May 11, 2020. Doc. 60.

        Although the parties agree they reached an oral agreement under which Plaintiff would provide work to Defendants, questions remain about whether payment was conditional on some future event, when any payment would occur, the form of any payment (stock versus cash, for instance), and the amount of any payment. In its motion for summary judgment, Plaintiff presents no facts answering these questions. Because Plaintiff has not met its burden to

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 17, 18, 19.

demonstrate an entitlement to judgment as a matter of law on the undisputed facts, the Court denies the motion for summary judgment.

## FACTUAL BACKGROUND

Defendant John Ericsson is the President and Chairman of the Board of Defendant AlgaStar, Inc. Plaintiff's Undisputed Material Fact ("UMF") No. 1.[2] AlgaStar is in the business of developing technology and products to grow algae for use in biofuels and other applications. UMF No. 2. Jane Barnes is a shareholder of Defendant AlgaStar and served as the project manager, interfacing with Fiore Industries, Inc. ("Fiore") with respect to the BioStim project that is the subject of this action. UMF No. 3. Fiore is a New Mexico company that has expertise in engineering, testing, facility operations, and information technology. UMF No. 4. Bill Miera is the Chief Executive Officer of Fiore. UMF No. 5.

Sometime in approximately 2012 or 2013, Ericsson and AlgaStar approached Miera to request Fiore's assistance in Ericsson and AlgaStar's project to develop a system for the accelerated growth of algae. UMF No. 6. At the request of Ericsson and AlgaStar, Fiore became involved in the project and provided various services, materials, equipment, and expertise, including engineering, laboratory access, testing, and labor that were all vital to the project. UMF

---

[2] Plaintiff's UMFs are set forth in Doc. 60 at 2-4. The Court's factual narrative draws from those facts because Defendants' response does not comply with the local rules' instructions to set forth a "concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist." D.N.M.LR-Civ. 56.1(b). Defendants do not comply with the instructions to number each fact in dispute, or to provide their own additional material facts set forth in separately lettered paragraphs. Instead, Defendants set forth their factual contentions in a long narrative that renders it very difficult for the Court (and Plaintiff, *see* Doc. 75 at 4-5) to tell which of Plaintiff's numbered facts are disputed, which portions of the record Defendants rely on to dispute them, and what additional material facts Defendants intend to present.

As explained in the Discussion section, looking just at Plaintiff's asserted facts, Plaintiff has not met its burden on summary judgment. Nonetheless, Defendants should comply with the local rules in the future.

No. 7. The work that Fiore provided for the project was of value to the project. UMF No. 8. Fiore incurred approximately $300,000 in expenses and costs relating to its work on the project. UMF No. 9.[3] The expenses and costs incurred by Fiore "relating to the project included wages for the labor of employees, purchases of materials, and for use of Fiore's equipment, materials, and laboratory and office space." UMF No. 10.

Prior to, and on multiple occasions during Fiore's work on the project, Ericsson and AlgaStar verbally promised to pay Fiore for the work and services Fiore provided for the project. UMF No. 11. Ericsson and AlgaStar promised to pay Fiore for the work Fiore provided because the work Fiore provided was of value to the project. UMF No. 12. Fiore's decision to cease work on the project was based solely on Ericsson and AlgaStar's refusal to pay Fiore for its work on the project. UMF No. 14. Fiore never offered to perform for free any work on the project or any work for Ericsson and AlgaStar, nor was any work performed by Fiore voluntary. UMF No. 15. Ericsson and AlgaStar have never compensated Fiore or paid Fiore for the work it performed for the project. UMF No. 18.

## PROCEDURAL HISTORY

Plaintiff filed its Complaint in federal court on December 26, 2018. Doc. 1. On July 19, 2019, Defendants filed a motion to dismiss. Doc. 12. This was the beginning of Defendants' claims that no contract existed between the parties. In their memorandum in support of the motion to dismiss, Defendants insisted that "Defendants are not parties to a contract, oral or written, with Plaintiff." Doc. 13 at 2. In fact, Ericsson signed an affidavit that included the

---

[3] These facts are set forth as background information only. The Court does not reach the issue of Fiore's damages because it denies the motion for summary judgment. Therefore, the facts relating to Fiore's damages are not material.

3

following paragraph: "This action arose over a claim of a breach of contract with Plaintiff, a contract that did not exist." Doc. 13-2 at 5 ¶ 19.

On October 30, 2019, the Court entered its Memorandum Opinion and Order granting in part and denying in part Defendants' motion to dismiss. Doc. 33. The Court found that the Complaint sufficiently stated a claim for breach of contract and that Plaintiff established a prima facie case of personal jurisdiction over Defendant Ericsson. *Id.* at 3-12, 14-17. The Court, however, dismissed Plaintiff's tort claims. *Id.* at 19-20. On November 12, 2019, Defendants filed an Answer and Counterclaim, alleging: (1) malicious abuse of process; (2) punitive damages; and (3) tortious interference with business expectations. Doc. 35. This pleading, again, alleged that: "The parties never entered into an agreement, oral or written." *Id.* at 2 ¶ 10. Further, the counterclaim alleged that Plaintiff brought this lawsuit without probable cause to believe that a contract existed, entitling Defendants to damages. *Id.*

On December 3, 2019, Plaintiff filed a motion to dismiss the counterclaims. Doc. 37. The Court granted this motion on June 23, finding that the Court lacked subject-matter jurisdiction over the claim for malicious abuse of process and that Defendants failed to state a claim for tortious interference with business expectations. Doc. 72. The Court denied the request to amend the counterclaims without prejudice to a properly filed motion that complied with the Local Rules. *Id.* at 12-13. Defendants did not file a motion to amend the counterclaims and so those claims are no longer live. Because the Court has already dismissed Defendants' counterclaims, it need not now address Plaintiff's request for summary judgment on these counterclaims.

Plaintiff filed the instant motion for summary judgment on May 11, 2020. Doc. 60. Defendants initially filed a response in opposition on May 29, in which (for the first time in the case) Defendants admitted an oral agreement existed between the parties. Doc. 67 at 2

4

("Defendant Ericsson offered that if Fiore would assist in this task, AlgaStar would compensate Fiore with an unsecured note for its costs to complete the units that could be exchanged for cash or AlgaStar stock if AlgaStar were successful in its future efforts to raise new capital. . . [and] advised Fiore that AlgaStar had no funds to be able to pay Fiore until the units were successfully marketed. Mr. Miera agreed to this proposal . . . .").[4] Concurrently, Defendants requested an extension of time to file a response while Defendants conducted additional discovery. Doc. 66. The Court granted that request. Doc. 70. Defendants filed an Amended Response on July 6. Doc. 74. The Court treats Doc. 74 as the operative response in opposition to the present motion. Plaintiff filed its reply on July 20. Doc. 75. Briefing is complete on the motion and it is ready for decision.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, a dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In reviewing

---

[4] In their amended response, Defendants repeat this statement with some revisions. Doc. 74 at 2 ("Defendant Ericsson offered that, subject to Fiore's assistance in this task, AlgaStar would compensate Fiore with an unsecured note for Fiore's costs to complete the units. The note could be exchanged for cash or AlgaStar stock, provided that AlgaStar were successful in its future efforts to raise new capital. Defendant Ericsson specifically advised Fiore that AlgaStar had no funds to be able to pay Fiore until the units were successfully marketed. Mr. Miera agreed to this proposal . . .").

5

a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *S.E.C. v. Thompson*, 732 F.3d 1151, 1156-57 (10th Cir. 2013) (internal quotation marks omitted). Initially, the party seeking summary judgment has the burden of showing that there is no genuine dispute as to any material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir. 1993). Once the moving party meets its burden, the non-moving party must show that genuine issues remain for trial. *Id.*

## DISCUSSION

**I.     The Court Denies Summary Judgment On The Claims Against John Ericsson.**

Plaintiff moves for summary judgment on all of its claims against both Defendants. *See generally* Docs. 60 & 75. Defendants include John Ericsson, who is sued in his individual capacity. But Plaintiff's own undisputed fact establishes that Defendant Ericsson is the President and Chairman of the Board of Defendant AlgaStar, Inc. UMF No. 1. Plaintiff does not address how Defendant Ericsson can be sued in his individual capacity for an oral contract his company entered into and breached. "As a general rule, [a corporate officer] cannot be held personally liable for the debts of the corporation or for its breach of contract." *Ettenson v. Burke*, 2001-NMCA-003, ¶ 25, 17 P.3d 440.

Nor do Plaintiff's undisputed material facts establish that Ericsson entered into a contract with Plaintiff in his individual capacity. For instance, UMF Nos. 11-12 are simply silent as to whether Ericsson promised to pay in his individual capacity or on behalf of AlgaStar as a corporate officer. Plaintiff does not present any facts, or make any argument, showing that Ericsson made a promise to pay in his individual capacity. *Cf. Morfin v. Villalobos*, No. 30,782, 2011 WL 2040809, at *3 (N.M. Ct. App. Apr. 26, 2011) (discussing evidence that supported the jury's verdict that the defendant entered into an agreement individually rather than in his

corporate capacity, such as the "personal nature and handshake-basis of the business relationship" and the fact that the plaintiff "received some checks from Defendant's personal account").

As the movant, it is Plaintiff's burden to establish that it is entitled to judgment as a matter of law. *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (even if a district court considers a motion for summary judgment uncontested, "it cannot grant summary judgment unless the moving party has met its initial burden of production under Rule 56 and demonstrated that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law"). Plaintiff has not met this burden. The motion for summary judgment on the claims against Defendant Ericsson is therefore denied.

## II. The Court Denies Summary Judgment On The Claim For Breach Of Contract Against AlgaStar.

Plaintiff argues that it is entitled to summary judgment against Defendant AlgaStar on the breach of contract claim because all the elements of a breach of contract claim were met: AlgaStar asked Plaintiff to perform work on the project and promised to pay Plaintiff for that work; Plaintiff accepted and performed the work; and AlgaStar did not pay. Doc. 60 at 5-6. As noted above, in the response to the motion for summary judgment, AlgaStar admits that an oral agreement existed under which Fiore would perform work for compensation. Doc. 74 at 2. AlgaStar further states, "[a]lthough AlgaStar does not deny that Plaintiff provided services of value, those services were ineffectual." Doc. 74 at 14. AlgaStar also agrees that an "agreement" between the parties was breached, although the parties debate where the fault lies for the various breaches. *Id.* at 2 ("Mr. Miera breached the agreement . . . ."); *id.* at 12 ("Plaintiff decided to terminate this agreement" and "breached the agreement").

Plaintiff's undisputed facts, however, leave several fundamental question unanswered: when was payment due, was payment conditioned on some future event that never occurred, what form was the payment to take (stock versus cash, for instance), and how was the amount of the payment to be determined? Plaintiff's facts do not answer any of these questions. The motion simply asserts that Defendants "verbally promised to pay Fiore for the work and services Fiore provided for the Project." UMF No. 1. Plaintiff then sets forth material facts regarding what it cost Plaintiff to become involved in the project. *See, e.g.*, UMF Nos. 9-10 ("Fiore incurred approximately $300,000 in expenses and costs relating to its work on the Project," including "wages for the labor of employees, purchases of materials, and for use of Fiore's equipment, materials, and laboratory and office space").

Many of these unanswered questions relate only to the issue of damages. As Plaintiff points out, if the Court concludes that factual issues remain on the question of damages, the Court may nonetheless grant summary judgment to Plaintiff on the question of liability. Doc. 75 at 10 (requesting, in the alternative, partial summary judgment on liability and that the Court leave damages to be determined at trial). Because the Court easily concludes that factual issues remain on the question of damages, the Court addresses the issue of damages first.

In New Mexico, the mere promise to pay can give rise to a contract if the parties intended to make a binding agreement. *Padilla v. RRA, Inc.*, 1997-NMCA-104, ¶ 7, 946 P.2d 1122. If "two parties have bargained for one of them to provide personal services[5] to the other but they have left the payment term to later negotiations, a court in appropriate circumstances may determine that the parties have reached an enforceable contract to provide the services for a

---

[5] This rule applies regardless of whether the contract is one for goods or services. *Padilla*, 1997-NMCA-104, ¶ 9 (citing NMSA § 55-2-305(1)(b)).

8

'reasonable' payment." *Id.* ¶ 10. What payment is "reasonable" is inherently a question of fact. *See Fischer Imaging Corp. v. Gen. Elec. Co.*, 187 F.3d 1165, 1171, 1173-74 (10th Cir. 1999) ("Determining the reasonable price of the [goods or services] may require consideration of the parties' course of dealing, course of performance, and the fair market value of the goods [or services]. The determination may also require consideration of production costs, including materials and labor.") (citations omitted). Here, although Plaintiff submits an affidavit from Bill Miera that provides evidence related to its expenses and costs, it presents no evidence of the type *Fischer* discusses. Nor does Plaintiff establish that AlgaStar ever agreed to pay the amounts in Miera's affidavit, much less that AlgaStar agreed to pay such amounts in cash, prior to the successful completion of the project. *See* Miera Aff. ¶ 9 (Doc. 60-3 at 2) ("Before Fiore became involved in the Project, and on multiple occasions during the course of Fiore's work on the Project, John Ericsson and AlgaStar verbally promised to pay Fiore for the work and services Fiore provided for the Project."). Because, assuming liability, Plaintiff has not presented facts that demonstrate the amount of damages and how those damages should be paid, the Court denies Plaintiff's motion for summary judgment on the question of damages.

The question of liability is a closer call, particularly in light of Defendants' failure to comply with local rules addressing how a party must respond to an opponent's asserted undisputed material facts and how that party must present its own asserted undisputed material facts. When a party fails to comply with local rules, the Court faces a dilemma. On the one hand, if the Court takes no action to enforce compliance with the local rules, the rules become meaningless and the efficiency and order they are designed to promote is lost. On the other hand, refusing to consider a party's evidence for failure to follow a local rule is a severe action that does not promote the Court's overarching goal of deciding cases on their merits. *Lee v. Max*

*Int'l, LLC*, 638 F.3d 1318, 1321 (10th Cir. 2011) ("our legal system strongly prefers to decide cases on their merits"). The Court need not resolve this dilemma here, however, because considering only evidence Plaintiff has presented, and drawing all reasonable factual inferences in favor of Defendants (the non-moving party), the Court concludes that a factual dispute exists regarding whether payment to Plaintiff was conditioned on the project receiving funding.

For instance, the portion of Defendant Ericsson's deposition testimony Plaintiff cites provides support for the conclusion that payment to Plaintiff was dependent on a triggering event that did not occur. Defendant Ericsson testified:

> A. There was a willingness to compensate Fiore for what they did, but they didn't accept our offer.
>
> Q. So, you did offer to pay them?
>
> A. We offered to bring compensation to Fiore as well as Chris Burak *upon the completion of the LODS with the BioStim unit and testing it*. And we offered to give them compensation in the way of stock in the company or debt from the company based on an amount of money *to be determined* for the value of what it is that they had contributed. *And I said contributed because we were under no obligation to pay them anything.*

Ericsson Dep. at 67:24-68:6 (Doc. 60-1 at 4) (emphasis added). Drawing all reasonable inferences in favor of Defendants for purposes of the present motion, based on this testimony payment was not due to Plaintiff until "the completion of the LODS with the BioStim unit and testing it." The Court currently has insufficient evidence regarding the completion and testing of the LODS with the BioStim unit to conclude under a summary judgment standard that this condition for payment occurred and, therefore, payment became due.

Further, when drawing all reasonable inferences in favor of Defendants, the email Defendant Ericsson wrote and that Plaintiff attached as Exhibit E indicates that, as of July 30, 2018, the parties agreed that compensation would not occur until their labor bore fruit. Ericsson wrote:

> In your previous email you [Miera] stated the following:
>
> "I [Miera] am not stopping you or Chris from taking the unit to Florida. As you start enjoying the fruits of our labor, however, we will expect prompt payment for our work"
>
> There will be no "fruits of our labor"
> —unless the BioStim units are successfully tested and verified to create the cause and effects expected from our past research.
>
> I have no problem to make a "prompt payment for our (Fiore's) work" however I am not asking you to do anything more than as promised previously, release the completed BioStim units for further testing while we are still trying to reach an "Agreement"

Plaintiff's Exhibit E (Doc. 60-5) (all errors in original). Drawing all reasonable inferences in favor of Defendants, a factfinder could conclude that Miera, on behalf of Plaintiff, had written that Plaintiff would expect payment as the fruits of the parties' labor were realized and, in response, Defendant Ericsson wrote that their labor had not yet born fruit because the BioStim units had not yet been successfully tested and verified.

Finally, Miera avers in his affidavit that, after Defendants allegedly abandoned the project and Plaintiff began pressing for payment, "Ericsson refused, instead only offering an extension of debt that would be paid when AlgaStar received funding." Doc. 60-3 ¶ 14 (Miera Aff.). Again, this evidence provides some support for Defendants' position that payment to Plaintiff was conditioned on Defendant AlgaStar receiving funding.

Because evidence exists on which, drawing all reasonable inferences in favor of Defendants, a reasonable factfinder could conclude that the parties agreed that payment to Plaintiff was conditioned on Defendant AlgaStar receiving additional funding (whether through sales or grants), and that triggering event never occurred, the Court denies Plaintiff's motion for summary judgment on the question of whether Defendants breached a contract. In other words, a dispute exists about whether the parties ever entered a mutual agreement to pay Plaintiff

11

regardless of the success of the project. Even accepting every fact in Plaintiff's motion for summary judgment, a reasonable factfinder could find that Defendants agreed to pay Plaintiff only if the project made money. If the project remained unfunded, a factfinder could conclude that Defendants never breached an agreement with Plaintiff and, accordingly, that there is no contract liability. As Plaintiff acknowledges in its motion, "a breach occurs when a party 'fail[s] to perform a contractual obligation when that performance is called for' in other words, when the party fails to perform as promised." Doc. 60 at 6 (quoting *Salehpoor v. New Mexico Inst. of Mining & Tech.*, 2019-NMCA-046, ¶ 11, 447 P.3d 1169). Plaintiff's facts do not establish when Defendants' performance was called for; therefore, Plaintiff is not entitled to partial summary judgment on the issue of contract liability.

## III.   The Court Denies Summary Judgment On The Quasi-Contract Claims.

Plaintiff moves for summary judgment on its quasi-contractual causes of action (promissory estoppel as alleged in Count III, unjust enrichment as alleged in Count VI, and quantum meruit as alleged in Count VII). Doc. 60 at 6. The Court denies the motion with respect to all three causes of action.

To prevail on the cause of action for promissory estoppel, Plaintiff must show "an actual promise made which in fact induced the promisee's action or forbearance." *Strata Prod. Co. v. Mercury Exploration Co.*, 1996-NMSC-016, ¶ 20, 916 P.2d 822. Summary judgment on this cause of action is denied for the same reasons as the breach-of-contract claim: questions remain about the nature of the promise for payment in this case. Specifically, the factfinder must determine whether the parties agreed to a triggering event for payment and, if so, whether that triggering event occurred.

Turning to Plaintiff's unjust enrichment and quantum meruit claims, as Plaintiff notes, it pleads these claims in the alternative to the breach-of-contract claim. Doc. 60 at 6. These causes

12

of action may give Plaintiff relief under equity in the absence of a contract. *Ontiveros Insulation Co. v. Sanchez*, 2000-NMCA-051, ¶ 11, 3 P.3d 200. Although Plaintiff brings separate claims for unjust enrichment and quantum meruit, in its motion for summary judgment, it acknowledges that the elements of these claims are the same. Doc. 60 at 7 (citing *Ontiveros* as providing the same elements for both claims). Those elements are that (1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust. *Ontiveros*, 2000-NMCA-051, ¶ 11. In support of the first element, Plaintiff cites Ericsson's deposition, where he admits Plaintiff's work in research, engineering, and building things, providing advice, identifying funding sources, and preparing grant applications was "of value" to the team, a team that included Defendants. Doc. 60-1 at 6-7. In support of the second element, Plaintiff argues that it would be unjust to allow Defendants to keep the value of that work without compensating Plaintiff. Doc. 60 at 8. In Defendants' response, "Defendant AlgaStar does not deny that Plaintiff provided services of value," but Defendants argue that "those services were ineffectual." Doc. 74 at 14.

To be clear, the provider of a valuable service does not lose its right to compensation just because those services turn out to be "ineffectual." As the Court noted in a previous Opinion: "That a product ultimately proves to be worthless does not mean that the services provided in producing that product had no value. For example, a drug company who hires an independent researcher to develop and test a drug that ultimately fails to provide the desired medical benefit still receives value from the work of the independent researcher, even if the product has no value." Doc. 33 at 18. On the other hand, just because something may have had value at one time does not mean that it ultimately conferred an unjust benefit to one party that, as a matter of equity, should be disgorged to the other party.

Suppose, for instance, a landscaper indisputably provides value to a construction project by planting numerous trees. Further suppose, however, that without providing notice to anyone the landscaper abandons the project before it has installed an irrigation system to water the trees. If all the trees die and must be removed at the expense of the property owner, the landscaper ultimately has conferred something that has a negative rather than positive value. The landscaper would not be entitled to compensation under a theory of unjust enrichment because (1) ultimately, the landscaper provided nothing of value and (2) it would not be just to require payment for the trees that died as a result of the landscaper's abandonment of the project.

Reviewing the facts in *Ontiveros*, the primary case on which Plaintiff relies to support its unjust enrichment claim (Doc. 60 at 7-8), highlights the importance in unjust enrichment cases of considering the value of the thing conferred. In *Ontiveros*, after a subcontractor installed heating systems in homes being built for the plaintiffs, the general contractor went bankrupt. 2000-NMCA-051, ¶¶ 3-4. The homeowners then hired a different company to complete construction of the homes which, after construction, appraised for more than the total cost of construction. *Id*. The subcontractor who installed the heating system sued the homeowners for unjust enrichment, arguing that the heating systems it installed conferred a benefit on plaintiffs and that it would be unjust to allow plaintiffs to retain that benefit without payment to the subcontractor. *Id*. ¶ 6.

In ruling for the subcontractors, the court of appeals found it significant that the heating systems the subcontractor installed contributed to plaintiffs being able to build homes that ultimately appraised for more than the cost of building them. *Id*. ¶¶ 4, 7, 14, 20-21. In contrast, had the work of the subcontractors in *Ontiveros* been rendered valueless because vandals destroyed that work while the unfinished home remained vacant, the subcontractors in *Ontiveros* likely would not have prevailed. The homeowners would not have received any value from the

14

subcontractor's work and it would not be just to require the homeowners to cover a loss the subcontractor suffered as a result of a contract the subcontractor had with the general contractor, not the homeowners.

Here, Defendants argue Plaintiff walked away from the job before completing it, thereby preventing Defendants from realizing any benefit from the value of Plaintiff's work. Doc. 74 at 9, 12. This version of the facts is more comparable to a subcontractor who plants a number of trees on a construction site that later die because the subcontractor pulled out of the job before installing an irrigation system to water the trees. Although the trees the landscaper planted provided value, that value was lost and of no benefit to the property owner as a result of the landscaper's failure to complete the project. Further, Defendants contend their intent was that Plaintiff would only be paid if the project received funding, which it did not. Doc. 74 at 8-9.

Plaintiff, on the other hand, argues that, regardless of the success of Defendants' product, it expected to be paid for the work Defendants hired it to perform. Doc. 75 at 5-6. And, regardless of whether Defendants' product was ultimately successful, Plaintiff provided support for the development of a system that allowed Defendants to present a product to potential customers. *Id.* at 11-12. It would be unjust, Plaintiff contends, for Defendants to retain the value of Plaintiff's work without compensating Plaintiff for it.

These differing versions of what happened are fodder for a trial, not summary judgment disposition. Therefore, the Court **DENIES** Plaintiff Fiore Industries, Inc.'s Motion For Summary Judgment And Memorandum In Support Thereof, Doc. 60.

_____
Steven C. Yarbrough
United States Magistrate Judge
Presiding by Consent